## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| KENNETH TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-01965 (LMB/WBP) |
| | ) | |
| AMAZON.COM SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Before the Court is Defendant Amazon.com Services LLC's ("Amazon") Motion for

Protective Order. ("Motion"; ECF No. 78.) By its Motion, Amazon asks the Court to prohibit

Plaintiff Kenneth Turner from deposing two employees who it alleges are high-ranking Amazon

corporate executives. (*Id.*) Amazon also seeks protection from Mr. Turner's request that one of

these corporate executives be designated as an Amazon document custodian. (*Id.*) On June 13,

2025, the Court granted in part and denied in part Amazon's Motion (ECF No. 110) and now

provides this Memorandum Opinion to further explain its rationale.

I.

Mr. Turner began working for Amazon on June 12, 2020, as a Principal Program

Manager with the Amazon in the Community ("AITC")[1] Team. (ECF No. 77 ¶¶ 17-18.) AITC

was one of several sub-business units within a larger Amazon business unit called Global

---

[1] On January 11, 2024, Amazon changed AITC's name to Amazon Community Impact ("ACI")
(ECF No. 77 ¶ 25), but for the purposes of this Motion, the Court uses the historic name, AITC.

Communications & Community Impact ("GCCI"). (*Id.* ¶ 40.) One of the other sub-business units within GCCI is Metro-Goldwyn-Mayer Studios Public Relations ("MGM PR").[2] (*Id.* ¶ 41.)

On January 10, 2024, Amazon informed Mr. Turner that he would be laid off as part of a reduction of force ("RIF") across GCCI, and after a 60-day notice period, Amazon terminated Mr. Turner on March 10, 2024. (*Id.* ¶¶ 34, 103.) On March 7, 2024, Amazon sent Mr. Turner a severance agreement and an Older Workers Benefit Protection Act ("OWBPA") disclosure; Mr. Turner signed the severance agreement on April 19, 2024. (ECF No. 77 ¶ 88.) For reasons that have not yet been explained, Amazon's OWBPA disclosure included Mr. Turner in the decision unit, which it defined as the group of employees who were selected for the RIF from the MGM PR team even though Mr. Turner never worked for the MGM PR team and had only worked for the AITC team. (EFC No. 77 ¶ 98.)

On June 6, 2025, Mr. Turner filed a nine-count Third Amended Complaint alleging various violations of the Age Discrimination in Employment Act of 1967, fraudulent inducement, and in the alternative, constructive fraud. (*Id.* ¶¶ 128-206.) In the Third Amended Complaint, Mr. Turner contends that, on April 29, 2024, Amazon posted his former role to its public job site at a level lower than the role Mr. Turner held so that Amazon could attract a less-qualified, significantly younger employee. (*Id.* ¶ 89.) Mr. Turner also claims that Amazon misrepresented the decision unit for the RIF in his OWBPA disclosure as MGM PR even though Amazon knew Mr. Turner worked in AITC. (*Id.* ¶ 112.) Mr. Turner alleges that the misrepresentation of the decision unit was intentional because there was a clear business need

---

[2] Other sub-business units within GCCI include Corporate Reputation & Content Strategy and Global Corporate Communications.

and justification for MGM PR's RIF, but there was no business need for the RIF in AITC. (*Id.* ¶ 117.)

## II.

On May 19, 2025, Mr. Turner noticed depositions for Beth Galetti and Drew Herdener for June 16, 2025, and June 18, 2025, respectively. (ECF No. 79 at 1.) Ms. Galetti is the Chief Human Resources Officer for all of Amazon, and she is responsible for over one million employees globally. (*Id.* at 1, 6.) Mr. Herdener is the Senior Vice President of GCCI—the Amazon business unit to which business sub-units AITC and MGM PR report—and he is responsible for approximately one thousand employees in GCCI. (*Id.* at 1, 6.) Both Ms. Galetti and Mr. Herdener report directly to Amazon's Chief Executive Officer. (*Id.* at 8.)

On June 6, 2025, Amazon moved for a protective order to quash the depositions of Ms. Galetti and Mr. Herdener and requested an order precluding Amazon from designating Ms. Galetti as a document custodian. (ECF No. 79.) Principally, Amazon argues that the "apex doctrine" prohibits Mr. Turner from deposing Ms. Galetti and Mr. Herdener because they both hold positions at the highest level of Amazon and Mr. Turner has not satisfied the rebuttable presumption that (1) these two important corporate executives have unique or special knowledge about the facts of the case and (2) other less burdensome avenues for obtaining the same information have been exhausted. (*Id.* at 5-6.) Mr. Turner argues that the apex doctrine does not apply to Ms. Galetti or Mr. Herdener because they are not "apex employees," and therefore the traditional Federal Rule of Civil Procedure 26 relevancy analysis applies to whether the Court should permit their depositions. (ECF No. 84 at 11-18.)

III.

Federal Rule of Civil Procedure 26(c)(1) provides that a court may, for good cause, "issue an order to protect a party … from annoyance, embarrassment, oppression, or undue burden or expense," by forbidding certain discovery. Good cause to issue a protective order will exist if the party seeking the protective order demonstrates that specific prejudice or harm will occur if a protective order is not granted. *United States v. Google, LLC,* 692 F. Supp. 3d 583, 592 (E.D. Va. 2023).

IV.

A.

The apex doctrine is a common-law doctrine that arose from the broad discretion given to district courts to control discovery. In essence, the doctrine provides a vehicle for a court to balance a party's right to liberal discovery with an apex deponent's right to be protected from abuse and harassment, especially when the information sought may be available from lower-level employees with more direct knowledge. Importantly, the apex doctrine requires the court to shift the burden of persuasion for the considerations required by the apex doctrine to the party seeking to take the deposition. Under the traditional Rule 26 analysis for objections to discovery requests, the burden of proving undue burden remains with the party opposing the deposition.

The earliest case the Court could locate meaningfully discussing the principles of the apex doctrine came out of the Fifth Circuit in 1979, *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979). In *Salter*, the Fifth Circuit affirmed a district court's order granting a protective order and quashing the deposition of the defendant's president, requiring that the plaintiff first depose lower-level employees with more direct knowledge. *Id.* at 651. The Fifth Circuit grounded its ruling in the broad discretion vested in district judges to control the timing of discovery. *Id.*

4

Since *Salter*, district courts throughout the country have used their discretion to quash depositions of high-ranking corporate executives or officials when those individuals did not have superior, unique, or personal knowledge that could not have been gathered through other means. *See e.g.*, *Community Fed. Sav. & Loan Ass'n v. FHLBB*, 96 F.R.D. 619 (D.D.C. 1983); *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991).

## B.

Despite its development and use in other areas of the country, the Fourth Circuit has never adopted the apex doctrine, and it only recently acknowledged it in *Kendrick v. Carter Bank & Tr., Inc*. No. 24-1377, 2025 WL 879703, at *3 n.5 (4th Cir. Mar. 21, 2025) (noting that a magistrate judge had relied on the apex doctrine in making his ruling). Nonetheless, as explained below, district courts within the Fourth Circuit have relied on the apex doctrine as "an aid to ensure 'that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs.'" *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12CV525, 2014 WL 12544827, at *2 (E.D. Va. Jan. 9, 2014) (quoting *Performance Sales & Mktg. LLC v. Lowe's Co.*, No. 5:07–cv–140, 2012 WL 4061680, at *3–4 (W.D.N.C. Sept. 14, 2012)). Therefore, when a party has sought to depose a high level official or corporate executive, district courts within the Fourth Circuit have applied the apex doctrine "to limit discovery to avoid" abuse or harassment. *JTH Tax, Inc. v. Aime*, No. 2:16CV279, 2016 WL 9223926, at *5 (E.D. Va. Dec. 13, 2016).

Courts that have applied the apex doctrine typically protect from deposition only those employees at the highest levels of the corporate or executive structures, such as governors, cabinet members, chief executive officers, chief financial officers, and members of a corporation's board of directors. *Cunagin as Next Friend of J.C. v. Cabell Huntington, Hosp.,*

*Inc.*, No. 3:19-CV-00250, 2021 WL 1518877, at \*4 (S.D.W. Va. Apr. 16, 2021). This is because

these high-ranking individuals are typically "'removed from the daily subjects of litigation' and

have no unique personal knowledge of the facts at issue" in a litigation. *Id.* (quoting *Celerity,*

*Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at \*3 (N.D. Cal. Jan. 25, 2007)).

In 2012, a court within the Fourth Circuit first referenced the apex doctrine in

*Performance Sales & Marketing LLC v. Lowe's Co.*, where the Western District of North

Carolina stated that

> [T]he apex doctrine is the application of the rebuttable presumption that the
> deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s
> proportionality standard or, on a party's motion for a protective order, constitutes
> "good cause" for such an order as an "annoyance" or "undue burden" within the
> meaning of Rule 26(c)(1). Should the deposing party fail to overcome this
> presumption, the court must then limit or even prohibit the deposition.

2012 WL 4061680, at \*4 (W.D.N.C. Sept. 14, 2012). Despite discussing the apex doctrine and

its shifting rebuttable presumption, the court determined that it need not apply it because it could

reach the same conclusion using Rule 26's relevancy analysis. *Id.*

In 2014, an Eastern District of Virginia court first addressed the apex doctrine in

*Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2014 WL 12544827. In *Intelligent*

*Verification Systems*, the court held that, when a party seeks to depose a high-ranking executive,

that party must show that "(1) the executive has unique or special knowledge of the facts at issue

and (2) other less burdensome avenues for obtaining the information sought have been

exhausted." *Intelligent Verification Sys., LLC*, 2014 WL 12544827, at \*2 (citing *Wal–Mart*

*Stores, Inc. v. Vidalakis*, No. 5:07–39, 2007 WL 4591569, at \*1 (W.D. Ark. Dec. 28, 2009)).

Even so, like the Western District of North Carolina in *Performance Sales*, the *Intelligent*

*Verification Systems* court did not apply the apex doctrine. Instead, finding the proposed

deponent not to be an "apex official" under the apex doctrine, it conducted the traditional Rule 26 relevancy analysis. *Id.*

Performance Sales and *Intelligent Verification Systems* are examples of courts using their broad discretion to resolve discovery disputes, including how the apex doctrine should be applied and whether to apply it at all.

In this Court's view, the best use of the apex "doctrine" is not so much as a burden-shifting device—which finds no home in Rule 26 and is a fundamental departure from its principles—but, instead, as a vehicle to employ a heightened level of scrutiny to Rule 26's traditional relevancy analysis after an apex deponent claims abuse and harassment. Put another way, the elements that make up the apex doctrine should be considered—without shifting any burdens—when the traditional Rule 26 relevancy analysis, standing alone, seems insufficient to preclude the deposition of a high ranking official or corporate executive who may have a less pronounced connection to the facts of the case.[3]

## C.

Applying these principles here, the Court finds that Mr. Turner has made an insufficient showing under Rule 26 to depose Ms. Galetti. Ms. Galetti is Amazon's highest-ranking human resources official, and she is responsible for over one million employees globally. (ECF No. 79 at 6.) Mr. Turner has been unable to identify any unique, special, or relevant knowledge of the facts at issue held by Ms. Galetti. The only relevant fact that Mr. Turner has proffered in support of his request to take her deposition is that Ms. Galetti's pre-printed name appears in Mr.

---

[3] Additionally, while in some districts it might seem reasonable to require a party to first seek information from lower-level employees before requesting an apex deposition, that same requirement would run head-long into the always-quickly-approaching deadline to complete discovery in this division.

Turner's severance agreement. No other fact connects Ms. Galetti with the facts here, including any knowledge at all about the RIF in GCCI. For these reasons, a request for Ms. Galetti's deposition is not proportional to the needs of the case.

This same analysis applies to Mr. Turner's request that Amazon appoint Ms. Galetti as a document custodian and search through all her electronic communications and documents. Amazon has represented to the Court that Ms. Galetti's name does not appear in documents or emails relevant here, apart from her preprinted name on Mr. Turner's severance agreement, a contention Mr. Turner does not dispute. (ECF No. 79 at 11-12.) Thus, Mr. Turner's request that Amazon be required to search all of Ms. Galetti's electronic communications and documents is not proportional to the needs of the case.

### D.

The Rule 26 analysis is different for Mr. Herdener. Mr. Herdener serves as the Senior Vice President and head of GCCI—the business unit where the RIF occurred—and ostensibly, he was the supervisor in charge of the RIF. Amazon contends that Mr. Herdener did not decide which employees within GCCI would be part of the RIF. This decision, says Amazon, was made by the managers of GCCI's sub-business units, AITC and MGM PR. But documents produced by Amazon in discovery—including an email chain between Mr. Herdener and others within GCCI—make clear that Mr. Herdener was consulted about the RIF and that the proposed final list of employees selected for termination had been approved by him. A deposition of Mr. Herdener would evidently lead to relevant information, and the Court finds that a two-hour deposition, as proposed by Mr. Turner, is proportional to the needs of this case.

Nor does the Court believe that the apex doctrine applies to Mr. Herdener. First, it is arguable whether he fits into the definition of a high-ranking corporate executive. Even though

Mr. Herdener reports to Amazon's CEO and manages over one thousand employees, courts have not expressly found that a senior vice president position is a high-ranking corporate executive subject to the apex doctrine. *See Cunagin as Next friend of J.C.*, 2021 WL 1518877, at *4 ("Typically, 'apex' deponents have included officials at the highest level of a corporation or government; such as, governors, cabinet members, chief executive officers, chief financial officers, and members of a corporation's board of directors."). And it is clear that Mr. Herdener was not "removed from the daily subjects" of this litigation because documents show that he was consulted about the RIF. *Id.*

Even if Mr. Herdener was an apex employee subject to the apex doctrine, Mr. Turner has satisfied the rebuttable presumption. As Mr. Turner correctly contends, Mr. Herdener is the only person at Amazon who has the unique bird's eye view of the entire RIF that impacted teams across GCCI, which Mr. Herdener led. (ECF No. 84 at 15.) Thus, the information he holds is unique. Nor are there any less burdensome avenues for obtaining Mr. Herdener's unique bird's eye perspective. For these reasons, a two-hour deposition of Mr. Herdener may provide relevant, unique information for Mr. Turner, and the request is proportional to the needs of the case.

V.

For these reasons, Amazon's Motion for Protective Order is GRANTED in part and DENIED in part. Mr. Turner may take a two-hour deposition of Mr. Herdener, but Mr. Turner may not depose Ms. Galetti, and Amazon need not search her electronic communications and documents.

Entered this 24th day of June 2025.

William B. Porter
United States Magistrate Judge

Alexandria, Virginia

9